IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:

Josh Newton,

    and

Sheepdog Tactical Gear LLC,

    and

Eleven 10, LLC,

    Plaintiffs,

vs.

Innovationly SK d.o.o.,
dba Aid & Aim Tactical,

    Defendant.

_____/

**[REDACTED PLACEHOLDER UNDER L.R. 1.11(d)][1]**

### Redacted Motion to Quash Deposition Subpoenas or, Alternatively, for Protective Order

In accordance with Fed. Civ. R. 26 and 45, Josh Newton, Sheepdog Tactical Gear LLC, and Eleven 10, LLC move this Court to quash the deposition subpoenas issued to Mr. Newton and Sheepdog Tactical Gear, LLC (collectively,

---

[1] In accordance with L.R. 1.11(d), Eleven 10 has redacted information from this motion that Innovationly designed under Protective Order in the Ohio Action. The Protective Order is attached as Exhibit "1". Eleven 10 provides this redacted filing as a placeholder, and L.R. 1.11(d) provides Innovationly with 14 days from receipt of this Motion to move to seal the unredacted version of this motion.

{10760238: }

"Sheepdog") by defendant Innovationly SK d.o.o., dba Aid & Aim Tactical or, alternatively, for a protective order excusing Newton and Sheepdog from having to appear for depositions. The subpoenas issued from a trade dress infringement case before the U.S. District Court for the Northern District of Ohio, entitled *Eleven 10 LLC v. Innovationly SK d.o.o., dba Aid & Aim Tactical*, No. 1:21-cv-2207 (the "Ohio Action").

As explained more below, the depositions that Innovationly seeks are not necessary, cumulative, and not proportional to the needs of the case. The Court should grant this motion accordingly.

I.   **Introduction**

Under Rule 26, a party may not obtain discovery unless the discovery sought is proportional to the needs of the case. Here, Sheepdog's only connection to the Ohio Action is that that Sheepdog notified Eleven 10 about the knockoff tourniquet cases being sold on Amazon by defendant Innovationly. That fact, however, is undisputed because the notice Sheepdog provided to Eleven 10 was by email. Eleven 10 admits that it received the email and does not dispute that Sheepdog provided the notice. Thus, there is no need to depose Sheepdog to further authenticate that email or to further establish the undisputed fact that it gave notice to Eleven 10 about Innovationly on October 8, 2019. Thus, the depositions that Innovationly seeks are unnecessary, cumulative, and not

proportional to the needs of the Ohio Action, especially when giving special weight to avoid burdening non-parties. The Court should quash the subpoenas or issue a protective order accordingly.

## II. Background

### A. The Parties

Sheepdog Tactical Gear LLC is a Florida limited liability company.

Josh Newton is an individual and Florida resident. He owns and operates Sheepdog.

Eleven 10 is a Westlake, Ohio limited liability company.

Innovationly SK d.o.o. is a Slovenian company.

### B. The Ohio Action

The disputed subpoenas issued from a trade dress infringement lawsuit by Eleven 10 against Innovationly. Eleven 10 owns trade dress rights to its hard-shell tourniquet case, called the RIGID TQ CASE. (See Amended Complaint attached hereto as Ex. "2"; Am. Compl. ¶¶ 12-13, ECF #11.)[2] Eleven 10 alleges that Innovationly's hard-shell tourniquet case is a knockoff and infringes Eleven 10's trade dress rights because it is confusingly similar in appearance (as explained more below). (*Id.* ¶¶ 23-25.) Discovery closed in that case on October

---

[2] Citations to the Amended Complaint and "ECF" entries are citations to the docket in the "Ohio Action," (defined *supra* at p.2).

28, 2022, and trial is set for May 16, 2023. (Minutes of Proceedings, 8/3/22, ECF #13 attached as Ex. "3".)

### C. The Eleven 10 Business

Eleven 10 is a Westlake, Ohio company that develops, manufactures, and sells tactical gear. (Am. Compl. ¶ 5, 11.) Its founder, Bill Janson, is a former Marine in the 2d Reconnaissance Battalion. He named his company "Eleven 10" after the November 10, 1775 birthday of the Marine Corps. Eleven 10's products are all "PROUDLY MADE IN THE USA."

By at least 2011, Eleven 10 began developing a distinctive hard-shell tourniquet case. The idea was to make the product look cool so police and first responders would want to carry lifesaving tourniquets on their belts. Eleven 10's first tourniquet case was launched in 2011, and the most current configuration launched in 2015. (Am. Compl. ¶ 19.) Eleven 10 sells its cases on its website, through authorized dealers on Amazon, and elsewhere. (*See id.* ¶ 19.)

After the Eleven 10 case took off in popularity, Chinese companies started selling knockoff versions through resellers on Amazon, eBay, and other e-commerce sites for half the price of Eleven 10's American-made product. (*See* Am. Compl. ¶ 3-4, 23-25.) Eleven 10 responded by submitting complaints to Amazon and suing companies that refused to stop selling the knockoffs. (Cavanagh Declaration ¶¶ 9-11, attached as Exhibit "4".) Innovationly is one of

the counterfeiters that Eleven 10 has sued. Most of the counterfeiters agreed to stop selling the knock-off cases, and many agreed to consent judgments and stipulated injunctions. (*Id.*) In total, Eleven 10 has obtained 11 permanent injunctions (by default or consent judgments) against sellers of knockoff products and one cessation of sales by settlement. (Ex. B. to Cavanagh Decl.)

### D. The Sheepdog Business

Sheepdog is a Florida company that sells tactical gear on its website at sheepdogsupply.com, on Amazon, and elsewhere. Sheepdog is one of the dealers that sells Eleven 10's RIGID TQ CASE on Amazon. Sheepdog's ***sole*** connection to the Action is that it notified Eleven 10 about Innovationly's knockoff case on October 8, 2019 by email—a fact that is not in dispute. (*See* Ex. E to Cavanagh Decl. (Sheepdog emails to Eleven 10).) Innovationly apparently contends that this notice from Sheepdog started a laches clock against Eleven 10. Eleven 10 admits, and does not dispute, that it received Sheepdog's October 8, 2019 notice. Eleven 10 does, however, dispute the laches defense because it acted timely by submitting a complaint to Amazon about the Innovationly knockoff product soon after receiving that notice, by at least early 2020. (*See* Cavanagh Decl. ¶ 21 & Ex. G.) Eleven 10 then repeatedly demanded that Innovationly stop selling the knockoffs until Eleven 10 had no choice but to sue Innovationly in November 2021. (*Id.* ¶ 21, Exs. G, H.) Thus, Eleven 10 did not unreasonably delay and there

was no prejudice to Innovationly, which makes laches inapplicable. *See Ausable River Trading Post, LLC v. Dovetail Solutions, Inc.*, 902 F.3d 567 (6th Cir. 2018) (affirming summary judgment of no laches where plaintiff timely asserted its rights and caused no prejudice).

    E.    **The Innovationly Business**

Innovationly is owned and operated by ▌▌▌▌ Davor Tadic. (Tadic Dep. 9:21-22.) Tadic lives ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (*See* Innovationly Resp. to Interrog. 14, att'd as Ex. C to Cavanagh Decl.; *see also* Tadic Dep. 25:3-10, Ex. A to Cavanagh Decl.) Although Tadic is in Slovenia, ▌▌▌▌▌▌▌▌▌▌▌▌ (Cavanagh Decl. Ex. A, Tadic Dep. 24:1-11.) Unlike Eleven 10, which has invested years of hard work and significant money in its business, Tadic ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ and has invested very little. (Cavanagh Decl. Ex A, Tadic Dep. 17:19-25.) He buys ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ and then resells them in the U.S. on Amazon at ½ the price of Eleven 10's case. (*See* Cavanagh Decl. Ex. C, Innovationly Resp. to Interrogs. 7 and 9.) ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (*See id*.) A side-by-side comparison leaves no doubt that the Innovationly product is a copy of Eleven 10's product:



| Eleven 10 Tourniquet Case | AAT Counterfeit Case |

(*See* Am. Compl. ¶ 23.) In fact, in discovery, Innovationly has admitted copying. It states that it first purchased its cases from ███████████████████████████████████████████████████████████████████████████████████████ (*See* to Cavanagh Decl. Ex. C Innovationly Resp. to Interrog. 9.)

███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

Thus, Innovationly is selling a copy-of-a-copy of the Eleven 10 case, and so it has no real defense against Eleven 10's trade dress claims.

### F. The Ohio Action

Innovationly's defense is lawyer-driven. Its lawyer has engaged in excessive discovery work that is disproportionate to the needs of the case, including serving extensive discovery requests that required Eleven 10 to engage an ESI vendor to process and review emails; taking four depositions, compared to Eleven 10's single deposition of Innovationly's owner; over-designating information under Protective Order, which required Eleven 10 to brief a successful motion to de-designate (Order, ECF #20, Exhibit 4); and requiring Eleven 10's owner to spend hours of busy work searching for and producing documents with little to no relevance to the case. (*See* Cavanagh Decl. ¶ 13.) Innovationly's excessive discovery demands have already run up Eleven 10's legal bills ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Without a valid defense for knocking off Eleven 10's tourniquet cases, it appears that Innovationly's strategy is to wage a war of attrition, hoping Eleven 10 will grow wary and give up.

---

[3] Innovationly contends that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ avanagh Decl. ¶ 14.) Those profits, which may be disgorged by Eleven 10 under the Lanham Act, *see* 15 U.S.C. § 1117(a), are likely to be Eleven 10's damages. So Innovationly's discovery demands ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

G.   **The Subpoenas**

Innovationly has issued document and deposition subpoenas to Newton and Sheepdog. (*See* Cavanagh Decl. ¶ 15 & Ex. D.) Newton and Sheepdog have already produced all responsive documents. (Cavanagh Decl. ¶ 18.) They do, however, object to their depositions. The parties met-and-conferred by email and phone, but were unable to resolve the dispute. (*Id.* ¶ 19 & Ex. F.) Sheepdog offered to provide an affidavit in lieu of a deposition, but Innovationly's attorney refused to even consider that option. (*Id.* ¶ 20 & Ex. F.)

The current subpoenas appear to be another effort to further run up Eleven 10's legal fees and to harass Eleven 10's customer, Sheepdog. There is no need for these depositions. Again, the only conceivable relevance of Sheepdog's testimony is that it sent the October 8, 2019 email about Innovationly to Eleven 10. That fact is undisputed, and Sheepdog offered to provide an affidavit authenticating that email and attesting that there were no earlier communications with Eleven 10 about Innovationly. Innovationly's counsel has refused to even consider an affidavit option. (*See* Cavanagh Decl. ¶ 19-20 & Ex. F.) Sheepdog and Newton have no other testimony that could tend to make a consequential fact more or less likely in the Ohio Action. *See* Fed. R. Evid. 401 (defining relevance).

### III. Law and Argument

#### A. Legal Standard

Under Rule 26(b)(1), a party may only seek discovery that is "relevant" and "proportional to the needs of the case." Proportionality is determined by considering:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. Civ. R. 26(b)(1). "A third-party subpoena is subject to the relevance and proportionality requirements of Rule 26(b)(1)." *Solamere Capital v. DiManno*, --- F. Supp. 3d ----, 2022 WL 3154551, at *5 (D. Mass. Aug. 8, 2022). Rule 45 further requires that a party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. Civ. R. 45(d)(1). A subpoena that seeks irrelevant or disproportional discovery imposes undue burden and expense, and thus is grounds for quashing the subpoena under Fed. Civ. R. 45(d)(3)(A)(iv). *See La Michoacana Natural, LLC v. Maestre*, No. 3:17-cv-727, 2021 WL 638989 (W.D.N.C. Feb. 18, 2021) (quashing document and deposition subpoenas that sought disproportional and cumulative discovery from non-party).

The Court may also enter a protective order cancelling the depositions under Rule 26 when the "discovery sought is unreasonably cumulative or duplicative" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *See* Fed. Civ. R. 26(b)(2)(C).

In reviewing a subpoena to a third-party, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Solamere*, 2022 WL 3154551, at *5.

**B. The depositions are disproportionate to the needs of the case.**

Here, Eleven 10's trade dress case against Innovationly is relatively simple. Eleven 10 must prove (i) the case's trade dress has acquired distinctiveness (aka, secondary meaning), (ii) the trade dress is primarily nonfunctional (in a trademark sense); and (iii) the Innovationly products are likely to cause confusion as to the source, sponsorship, affiliation, or approval of Innovationly's products. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (Fed. Cir. 1991). Eleven 10 has not offered Sheepdog as a witness to establish any of those proof elements of its case.

The only conceivable relevance that Sheepdog has to Innovationly's defense in the Ohio Action is for its laches defense. As to laches, Innovationly apparently contends that Eleven 10 should have acted sooner after Sheepdog gave Eleven 10 notice that Innovationly was selling a knockoff of the Eleven 10

case. But, again, the fact that Sheepdog gave that October 2019 notice to Eleven 10 is undisputed: Eleven 10 admits that it received Sheepdog's email. (Cavanagh Decl. ¶ 17.) In fact, it is undisputed that Eleven 10 submitted a complaint about the Innovationly knockoff product to Amazon soon after receiving the notice from Sheepdog, by no later than early 2020, and then repeatedly demanded that Innovationly stop selling the products in follow-up correspondence. (*See* Cavanagh Decl. ¶ 21-22 & Ex. G (correspondence between parties), H (Dec. 2020 notice from Amazon).)

To the extent Innovationly contends that it needs to depose Sheepdog about the other knockoff products listed on the spreadsheet attached to its October 2019 email, that spreadsheet does not justify the deposition of a non-party. Again, it is undisputed that there were other sellers of knockoff products, and it is undisputed that Eleven 10 enforced its trade dress rights against other sellers by submitting complaints to Amazon and eBay, communicating directly with them, and filing lawsuits. (*See* Cavanagh Decl. ¶ 9-11.) And Eleven 10 has given Innovationly all of the records of those enforcement efforts in discovery. (*Id.* ¶ 10.) Furthermore, Innovationly had a full opportunity to obtain information about Eleven 10's enforcement efforts against other knockoff sellers when it took the deposition of Eleven 10's owner, who was designated to testify about "Eleven 10's efforts to enforce the Alleged Trade Dress against perceived infringers."

(Cavanagh Decl. ¶ 17.) Thus, Sheepdog's testimony is, at best, cumulative and, at worst, irrelevant.

All of the proportionality factors under Rule 26 weigh against Innovationly. The amount in controversy is Innovationly's ███████ ████████████████. Because Innovationly's discovery work has ███ ████████████████████████████████████ Innovationly is already beyond the proportional limits of discovery. (*See* Cavanagh Decl. ¶ 14.)

As to "the parties' relative access to relevant information," Innovationly already has access to the October 2019 email, has Eleven 10's enforcement records, and deposed Eleven 10 about its enforcement work. (Cavanagh Decl. ¶ 10, 17.) Courts agree that parties should not burden non-parties with depositions when they can obtain the information directly from a party to the case. *See Solamere*, 2022 WL 3154551, at *8 (quashing subpoenas, including deposition subpoenas, where information sought was "unreasonable cumulative or duplicative" of discovery produced in the underlying action and party had "ample opportunity to obtain the discovery"); *La Michoacana*, 2021 WL 638989, at *2 (quashing deposition subpoena where information was available from a party in the case). Any work that Sheepdog did in identifying and listing sellers of knockoffs was communicated to Eleven 10, and thus Innovationly has obtained

(or could have obtained) the information directly from Eleven 10. Thus, this factor weighs in favor of quashing the subpoena.

As to the burden or expense of the discovery, Sheepdog is a non-party, and thus it should not be burdened with the inconvenience and stress of being deposed to further establish facts that are already established. *See Solamere*, 2022 WL 3154551, at *5 (citing "special weight" given to avoid burdening non-parties).

As to the "importance of the discovery in resolving the issues," Sheepdog's testimony would be cumulative because it is undisputed that it sent the two emails at issue, those emails speak for themselves on any potentially relevant issues, and Innovationly has already had an opportunity to depose Eleven 10's Rule 30(b)(6) witness, and Innovationly deposed the Eleven 10 employee that received the emails from Sheepdog: John Joaquin. (Cavanagh Decl. ¶ 17.) Thus, Sheepdog's testimony is not necessary for resolving the issues, let alone important enough to impose the burden of a deposition on a non-party for a case with a relatively small amount of damages.

## Conclusion

The Court should grant this motion accordingly.

## Local Rule 3.01(g) Certification

The movants certify that their counsel has conferred with counsel for Innovationly by email and teleconference, and Innovationly advises that it opposes the entirety of this motion.

Respectfully submitted,

Dated:  November 3, 2022

     /s/ Alan Burger
     Alan Burger – Lead Counsel
     FBN: 833290
     McDonald Hopkins LLC
     505 S. Flagler Drive, Ste. 300
     West Palm Beach, FL 33401-5942
     t 561-472-2121 | f 561-472-2122
     aburger@mcdonaldhopkins.com

     and

     Matthew J. Cavanagh (OH 0079522)
      *pro hac vice* application forthcoming
     McDonald Hopkins LLC
     600 Superior Avenue, East, Ste. 2100
     Cleveland, Ohio 44114
     t 216.348.5400 | f 216.348.5474
     mcavanagh@mcdonaldhopkins.com

     *Counsel for Plaintiffs*